BAY CITY EDUCATION ASSOCIATION v BAY CITY PUBLIC
SCHOOLS

Docket No. 86092. Submitted February 13, 1986, at Lansing. Decided
August 18, 1986. Leave to appeal applied for.

The Bay City Education Association and other unions filed an
unfair labor practice charge with the Employment Relations
Commission against the Bay City Public Schools, alleging that
the school board's decision to transfer the operation of the
special education program to the intermediate school district
was a mandatory subject of bargaining and demanding that the
matter be submitted for negotiation. On July 18, 1984, the
hearing referee entered his decision and recommended order.
On August 8, 1984, the unions filed exceptions to the hearing
referee's decision and recommended order and on April 18,
1985, MERC affirmed the hearing referee's decision. On May 13,
1985, the unions filed a motion for rehearing and reconsidera-
tion which was denied by MERC on June 24, 1985. The unions
filed a claim of appeal on July 6, 1985.

The Court of Appeals *held:*

1. The issue of subcontracting special education services and
programs is a mandatory subject of bargaining.

2. A request for an administrative rehearing must be filed
within sixty days after the mailing of notice of the decision or
order. The claim of appeal, therefore, was timely filed.

Reversed and remanded with instructions.

1. LABOR RELATIONS — COLLECTIVE BARGAINING — DECISION TO SUB-
CONTRACT — MANDATORY BARGAINING.

Three factors are crucial in determining whether an employer's
decision to subcontract work that was formerly done by em-
ployees is a subject of mandatory bargaining: (1) if the decision

REFERENCES

Am Jur 2d, Administrative Law §§ 520-538.
Am Jur 2d, Labor and Labor Relations §§ 998, 1787-1800, 1879.
Employer's decision to have work done by independent contractors
rather than by employees as unfair labor practice. 6 ALR3d 1148.
See also the annotations in the ALR3d/4th Quick Index under
Administrative Law.

to subcontract does not alter the employer's basic operations; (2) if there is no capital investment or recoupment; and (3) if the employer's freedom to manage his business would not be significantly abridged by requiring bargaining.

2. LABOR RELATIONS — SCHOOLS — COLLECTIVE BARGAINING — SUBCONTRACTING — SPECIAL EDUCATION PROGRAMS — MANDATORY BARGAINING.

The issue of subcontracting special education services and programs is a mandatory subject of bargaining.

3. ADMINISTRATIVE LAW — REHEARINGS — ADMINISTRATIVE PROCEDURES ACT.

An administrative agency is permitted to order a rehearing, either on its own motion or on the motion of a party, for reasons other than an inadequate record (MCL 24.287; MSA 3.560[187]).

4. ADMINISTRATIVE LAW — REHEARINGS — ADMINISTRATIVE PROCEDURES ACT.

A request for an administrative rehearing must be filed within sixty days after the mailing of notice of the decision or order (MCL 24.287[3], 24.304; MSA 3.560[187][3], 3.560[204]).

*Foster, Swift, Collins & Coey, P.C.* (by *Stephen O. Schultz*), for the charging parties.

*Allsopp, Fitzgerald & Kolka* (by *William W. Allsopp*), for the Bay City Public Schools.

Before: R. B. BURNS, P.J., and BRONSON and J. C. TIMMS,* JJ.

J. C. TIMMS, J. Bay City Education Association, Bay City Public Schools Secretarial/Clerical Association, and Nonacademic School Employees Association (hereafter the unions) appeal as of right from a decision and order of the Michigan Employment Relations Commission dated April 15, 1985, holding that Bay City Public Schools (hereafter school district) had no duty to bargain with respect to its decision to transfer the operation of its

---

* Circuit judge, sitting on the Court of Appeals by assignment.

special education program to the Bay-Arenac Intermediate School District. We reverse.

The facts of this case are uncontested. On February 8, 1982, the board of education of the school district at a regular meeting voted to transfer the operation and responsibility for its special education program to the intermediate school district as a cost saving measure. Early in March, the school district received letters from each of the unions claiming that the decision to transfer services was a mandatory subject of bargaining and demanding that the school district submit the matter for negotiation. The school district answered that it had no legal duty to bargain over its decision.

On April 1, 1982, the unions filed an unfair labor practice charge with MERC.

On May 20, 1982, the first of two hearings was held before the hearing referee. A second hearing was held March 15, 1983, and on July 18, 1984, the hearing referee entered his decision and recommended order. On August 8, 1984, the unions filed exceptions to the hearing referee's decision and recommended order and on April 18, 1985, MERC affirmed the hearing referee's decision. On May 13, 1985, the unions filed a motion for rehearing and reconsideration which was denied by MERC on June 24, 1985. This claim of appeal was filed on July 6, 1985.

Two issues are raised. First, this Court must determine whether the decision of the school district to transfer the operation of its special education program to the intermediate school district is a mandatory subject of bargaining under the public employment relations act, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.* Second, we must determine whether this appeal was timely filed.

I

The thrust of the school district's position is that for a number of reasons, but primarily a lack of financial support, it "got out of the special education business" and claims it has the prerogative to terminate a portion of its business for financial reasons without engaging in collective bargaining.

On the other hand the unions, which represent school district employees whose positions would be terminated, contend that the school district has "subcontracted" the responsibility to provide special education services and that subcontracted work, which was formerly performed by members of the bargaining unit, is a mandatory subject of bargaining under PERA.

Simply stated, the unions contend that if the local school district has the ultimate responsibility for providing special education services it can not "get out of the special education business," and has merely "subcontracted" these services.

Article III of the School Code, MCL 380.1701 *et seq.;* MSA 15.41701 *et seq.,* provides for special education services. The State Board of Education has the duty to "[d]evelop, establish, and continually evaluate and modify" a state plan for special education in cooperation with the intermediate school districts, MCL 380.1701(a); MSA 15.41701(a), and the intermediate school districts have this same duty to "[d]evelop, establish, and continually evaluate and modify" intermediate district plans for special education in cooperation with their constituent districts, MCL 380.1711(1)(a); MSA 15.41711(1)(a).

However, MCL 380.1751(1); MSA 15.41751(1) provides in part:

(1) The board of a local school district *shall*

*provide* special education programs and services designed to develop the maximum potential of each handicapped person in its district on record under § 1711 for whom an appropriate educational or training program can be provided in accordance with the intermediate school district's special education plan, in either of the following ways or a combination thereof:

(a) Operate the special education program or service.

(b) Contract with its intermediate school board, another intermediate school board, another local school district board, an adjacent school district board in a bordering state, the Michigan School for the Blind, the Michigan School for the Deaf, the Department of Mental Health, the Department of Social Services, or any combination thereof, for the delivery of the special education programs or services, or with an agency approved by the State Board for delivery of an ancillary professional special education service. The intermediate school district of which the local school district is constituent shall be a party to each contract even if the intermediate school district does not participate in the delivery of the program or services. [Emphasis added.]

Thus, the State Board of Education and the intermediate school districts have the duty to develop and establish a plan for special education but the local school district has the duty and responsibility to provide the special education services. From this, it seems clear that the school district is precluded by law from getting "out of the special education business." The end result of the school district's action was the contracting of the special education services to the intermediate school district.

Is the contracting of these services, then, a mandatory subject of bargaining? Section 15 of

PERA, MCL 423.215; MSA 17.455(15), provides in part:

> For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment.

The subjects which are included within the phrase, "wages, hours, and other terms and conditions of employment," are mandatory subjects of bargaining and refusal to bargain about mandatory subjects constitutes an unfair labor practice under § 10(e) of PERA, MCL 423.210(e); MSA 17.455(10)(e). *West Ottawa Ed Ass'n v West Ottawa Bd of Ed,* 126 Mich App 306, 314; 337 NW2d 533 (1983).

Whether "contracting out" or "subcontracting" are mandatory subjects of bargaining has been previously addressed by both the United States Supreme Court and this Court. See *Fibreboard Paper Products Corp v National Labor Relations Bd,* 379 US 203; 85 S Ct 398; 13 L Ed 2d 233 (1964); *Van Buren School Dist v Wayne Circuit Judge,* 61 Mich App 6; 232 NW2d 278 (1975). Those cases have suggested certain guidelines as being helpful in determining whether, under the facts of each case, "contracting out" and "subcontracting" are mandatory subjects of bargaining.

In *Van Buren, supra,* which relied on *Fibreboard, supra,* the Court found that a decision to subcontract is a mandatory subject of bargaining if: (1) the decision does not alter the employer's basic operation; (2) there is no capital investment or recoupment; and (3) the employer's freedom to manage his business would not be significantly abridged by requiring bargaining.

Applying these standards to the facts of the instant case, this Court finds that the decision to subcontract the special education program to the intermediate school district was a mandatory subject of bargaining. First, the transfer of the services does not alter the school district's basic operation. Services are still provided, albeit through a contract. It also appears that the same services continue to be provided in the same place and in the same manner as before the decision to subcontract. Secondly, the school district's decision did not involve any capital investment or recoupment. The sole purpose of the decision to subcontract the services was to reduce its costs. Third, this Court finds several reasons why the issue of subcontracting would not impair the school district's freedom to manage. As noted earlier, a school district is required by law to maintain a special education program in some form. The school district is not at liberty to discontinue the program. Further, it would seem that there was no urgency or immediacy in reaching its decision to subcontract the program. Further, discussions of this problem between labor and management may well have produced an alternate, yet satisfactory, method of solving the problem. It must be remembered that the law only requires that the parties bargain in good faith; the law does not require that the parties resolve their differences. *Houghton Lake Ed Ass'n v Houghton Lake Community Schools Bd of Ed,* 109 Mich App 1, 6; 310 NW2d 888 (1981), lv den 413 Mich 917 (1982). In this case the school district refused to bargain on an issue that this Court believes is a mandatory subject of bargaining. See *Fibreboard, supra; National Labor Relations Bd v American National Ins Co,* 343 US 395; 72 S Ct 824; 96 L Ed 1027 (1952).

We hold therefore that the issue of subcontract-

ing the special education services was a mandatory subject of bargaining.

In fashioning a remedy certain additional facts must be noted. Forty percent of the school district's special education program consisted of students from surrounding districts. The surrounding districts had contracted with the school district for those services. There is no evidence that the surrounding districts had any collective bargaining agreements with the unions. Thus, the surrounding districts would have had no duty to bargain with the unions in respect to their decision to transfer their special education students elsewhere.

On remand MERC shall reinstate with back pay only those special education employees who were wrongfully terminated and who would not have been among those employees who would have been laid off as a result of the decision of the surrounding districts to transfer their special education students elsewhere.

II

Was this appeal timely filed? Very briefly, the facts indicate that MERC's unfavorable decision to the unions was entered on April 18, 1985. The unions filed a motion for hearing or reconsideration on May 13, 1985, twenty-five days after the entry of MERC's order. On June 24, 1985, the motion for rehearing was denied. This claim of appeal was filed on July 6, 1985, some twelve days after the denial of the motion. The real issue is whether the unions timely filed their motion for rehearing or reconsideration.

The unions claim that they have sixty days within which to seek judicial review pursuant to MCL 24.304; MSA 3.560(204), § 104 of the Adminis-

trative Procedures Act, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.,* and that, since their request for rehearing was filed twenty-five days after MERC's original order, the motion for rehearing was timely filed.

The school district claims that the unions were required to abide by the twenty-one day period as required by MCR 7.101(B)(1)(a) and are not entitled to rely on MCR 7.204(A)(1)(c), which permits other time periods for taking appeals as "provided by law." The school district argues that there is no procedure for seeking a rehearing of a MERC decision without alleging new facts or law and since there was no "justifiable reason" set forth in the motion for rehearing that the sixty-day period is not applicable. We do not agree.

Provisions for rehearings before administrative agencies are set forth in MCL 24.287; MSA 3.560(187):

> (1) An agency may order a rehearing in a contested case on its own motion or on request of a party.
>
> (2) Where for justifiable reasons the record of testimony made at the hearing is found by the agency to be inadequate for purposes of judicial review, the agency on its own motion or on request of a party shall order a rehearing.
>
> (3) A request for rehearing shall be filed within the time fixed by this act for instituting proceedings for judicial review.

The school district seems to base its argument upon subsection (2) above. We do not believe that section is applicable to the facts of this case. Subsection (2) addresses the inadequacy of the record of testimony and, where that occurs, the

agency may on its own motion request a rehearing to resolve the factual inadequacies. This section does not limit rehearings to only that situation. Certainly under subsection (1) if a question were raised as to a misapplication of the law on a particular case or for no doubt many other reasons, the agency is permitted, either on its own motion or on motion by a party, to order a rehearing.

MCL 24.287(3); MSA 3.560(187)(3) describes the time for filing a motion for rehearing as follows:

> A request for a rehearing shall be filed within the time fixed by this act for instituting proceedings for judicial review.

MCL 24.304; MSA 3.560(204) sets forth the time requirement for filing petitions for review.

> (1) A petition shall be filed in the court within 60 days after the date of mailing notice of the final decision or order of the agency, or if a rehearing before the agency is timely requested, within 60 days after delivery or mailing notice of the decision or order thereon.

The time for filing an appeal is sixty days after the date of mailing notice of the final decision or order of the agency. The time to file a motion for rehearing would therefore be within sixty days after the date of mailing of the final decision or order of the agency. The motion for rehearing in the case was filed twenty-five days after MERC's final order. We conclude that this appeal was timely filed.

The decision of MERC is reversed and remanded with instructions in accordance with this opinion.